# EXHIBIT 4

Case 1:13-cr-00244-KBJ   Document 20-4   Filed 11/15/13   Page 2 of 6

Case 1:09-cr-00227-HHK   Document 21-7   Filed 11/26/10   Page 2 of 6
Case 1:09-cr-00095-ESH   Document 30-1   Filed 05/03/10   Page 37 of 41

1

```
 1                  UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2   ----------------------------X

 3   UNITED STATES OF AMERICA      Criminal Case No. 09-051

 4              v.

 5   DAVID MALAKOFF,

 6                Defendant,

 7   ----------------------------X      Washington, D.C.
                                        Thursday, July 16, 2009.
 8                                          10:34 A.M.

 9
                        TRANSCRIPT OF SENTENCING
10              BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
                      UNITED STATES DISTRICT JUDGE
11   APPEARANCES:

12   FOR THE GOVERNMENT: Bridgette D. Crafton, AUSA
                         U.S. ATTORNEY'S OFFICE
13                       555 Fourth Street, NW
                         Washington, DC 20530
14                       (202) 353-2385

15
     FOR THE DEFENDANT:  Danny C. Onorato, ESQ.
16                       David Schertler, ESQ.
                         Lisa Schertler, Esq.
17                       SCHERTLER & ONORATO, L.L.P.
                         601 Pennsylvania Avenue, NW
18                       North Building, 9th Floor
                         Washington, DC 20004-2601
19                       (202) 628-4199

20
     Court Reporter:     Lisa Walker Griffith, RPR
21                       U.S. District Courthouse
                         Room 6507
22                       Washington, D.C. 20001
                         (202) 354-3247
23

24   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
25
```

Case 1:13-cr-00244-KBJ   Document 20-4   Filed 11/15/13   Page 3 of 6

Case 1:09-cr-00227-HHK   Document 21-7   Filed 11/26/10   Page 3 of 6
Case 1:09-cr-00095-ESH   Document 30-1   Filed 05/03/10   Page 38 of 41

39

that resulted from the rape. The sole cause of his illegal conduct is the trauma he experienced as a child, and most significantly, and I quote, in this instance, society would be revictimizing the victim if it were to impose additional retributable action against Mr. Malakoff.

The defendant has received tremendous support from his community, his professional colleagues and his immediate and extended family. The numerous letters attest to his many positive attributes and substantial support system that he has in place to help him. It is also clear, and I don't think anybody doubts this sitting where I do here, that he is genuinely remorseful. And despite the traumatic experience of his youth, he appears to have maintained a socially and productive and well adjusted life, and has been a positive force in the lives of many others.

The maximum sentence here for this offense is ten years. But as noted, the guideline range provides for imprisonment for six and a half to eight years, even for someone such as the defendant, with no prior record.

This range in the guidelines is driven by several factors or what we call in the law, enhancements. One, the images include children under the age of 12; they portrayed depictions of violence; a computer was used. And as we've pointed out earlier, the defendant's sentencing range is enhanced because of the number of images which are driven by

Case 1:13-cr-00244-KBJ   Document 20-4   Filed 11/15/13   Page 4 of 6

Case 1:09-cr-00227-HHK   Document 21-7   Filed 11/26/10   Page 4 of 6
Case 1:09-cr-00095-ESH   Document 30-1   Filed 05/03/10   Page 39 of 41

40

1  the calculation, that there are 75 images in a video. So,
2  when there are six or nine videos, the numbers add five
3  enhancement levels to the guideline range alone.
4      These enhancements, if you read the literature, are
5  present in many, if not most cases. Most defendants use a
6  computer, and given the easy availability of this type of
7  material, it is easy to have a five level enhancement for 600
8  or more images.
9      In addition, a review of the case law, including the
10 only relevant cases that I found in this jurisdiction that
11 includes one that Mr. Onorato had before, indicates that a
12 significant percentage of cases involve substantial downward
13 variances. Of the five cases that my probation department
14 was able to identify in this jurisdiction where there was no
15 mandatory minimum that controlled the sentence, there were
16 significant downward variances in three of these five cases.
17     I've also, the sentencing memo that the defendant
18 provided on pages 16 to 17, include cases where little or no
19 jail time was imposed. And this has been reviewed at least
20 by three circuits and upheld in the Fifth, Sixth and Ninth
21 circuits.
22     In addition, I've determined from the source book of
23 Federal Sentencing Statistics, that there were downward
24 variances in 2007 under Section 2(G)2.2, 33 percent of the
25 time, and in 2008, this figure was 35 percent. It's a very

Case 1:13-cr-00244-KBJ   Document 20-4   Filed 11/15/13   Page 5 of 6

Case 1:09-cr-00227-HHK   Document 21-7   Filed 11/26/10   Page 5 of 6
Case 1:09-cr-00095-ESH   Document 30-1   Filed 05/03/10   Page 40 of 41

41

1  telling fact because it tells you that the guidelines are not
2  working well enough in this instance. There has been a lot
3  of scholarly examination of this, and it does raise a
4  troubling fact because the guidelines have and are designed
5  to reduce unwarranted disparities.
6      But Judge Roberts of this Court, in a case called
7  Matheron, M.A.T.H.E.R.O.N., and in other cases in district
8  courts across the country, have determined why the guidelines
9  are flawed, and that they do not reflect the sentencing
10 commission's exercise of its character institutional rule.
11 Therefore, they are not entitled to the usual deference.
12     Judge Roberts in that case from the bench said, and
13 I'm quoting, The base offense level was not derived from the
14 sentencing commission's recommendation based upon its
15 singular expertise and study of real sentencing data and
16 national experience, the way the commission determined most
17 other base offense levels. Over time, the level here was
18 substantially increased, not as a result of studies by the
19 expert body Congress created, but was ultimately key to the
20 increased statutory maximum sentence and the statutory
21 mandatory minimum sentences for the trafficking offenses.
22 Moreover, the enhancement for the volume of images was
23 created by legislation, not crafted or recommended by the
24 commission based upon its careful study in correlation to
25 sentencing goals under 3553.

Case 1:13-cr-00244-KBJ   Document 20-4   Filed 11/15/13   Page 6 of 6

Case 1:09-cr-00227-HHK   Document 21-7   Filed 11/26/10   Page 6 of 6
Case 1:09-cr-00095-ESH   Document 30-1   Filed 05/03/10   Page 41 of 41

42

```
 1          Nor does this guideline assure just punishment in
 2     individual cases.  The enhancement for using a computer is a
 3     undifferentiated application that fails to distinguish the
 4     level of culpability for consuming images from that of
 5     computer using predatory pedophiles, child molesters and
 6     child pornographers, or from offenders using the computer for
 7     commericial profit or mass distribution.  The Supreme Court
 8     recently in 2009 in a case called Spears versus United States
 9     finally rejected the notion that policy disagreements with
10     guideline cannot provide a basis for sentencing variances.
11          The flaws recognized by Judge Roberts were detailed
12     also by a judge in Wisconsin in the Hanson case:  And I
13     cannot but help to agree that since the problems, since it's
14     clear here that the guidelines are painfully inappropriate, I
15     cannot accord the usual deference to the guidelines.  And for
16     the policy reasons that were explained by my colleague, Judge
17     Roberts and others, they will not be applied here.  I have
18     concluded that the range provided for by the guidelines is
19     highly punitive and far greater than is necessary to achieve
20     the purposes of sentencing.
21          The Court will now address those purposes.  The
22     federal sentencing laws ask the Court to consider
23     retribution, deterrence, incapacitation and rehabilitation.
24     Retribution imposes punishment based on moral culpability,
25     whereas deterrence, incapacitation and rehabilitation are
```