# The New York Times

May 21, 2013

# 'Sex Offender Village'

By LISA F. JACKSON and DAVID FEIGE

For this Op-Doc video, we visited a small community in Florida known as "Miracle Village," where more than 100 registered sex offenders have settled since 2009. Surrounded by sugar cane fields, the community has become a rare refuge for them as they try to rebuild their lives in one of the only communities that will have them: stringent residency requirements make it almost impossible for them to live anywhere else.

We come to this documentary from two very different perspectives. Lisa has spent years examining sex crimes from the victim's point of view, making documentaries that try to de-stigmatize the survivors and argue for their access to justice. David spent his years as a public defender in Brooklyn, Harlem and the Bronx, defending people accused of doing the victimizing. These contrasting perspectives have made for a lively collaboration in which we have found common ground.

We live in a society that is terrified of sex offenders, sometimes with good reason. But in some cases the perpetrators, and not just the victims, are denied justice. Every high-profile sex crime spawns a rush to do something about the "predators" among us. Unfortunately, these so-called solutions are doing more harm than good. In the past 25 years, the laws governing sex offenses have gone from punitive to draconian to senseless. The term "sex offender" simply covers too wide a range now, painting the few truly heinous crimes and the many relatively innocuous ones with the same broad brush. This overly broad approach wastes resources that could be better spent, for instance, on clearing the huge and unforgivable backlog of untested rape evidence kits.

We see even deeper problems: the explosion of sex offender registries, stringent yet demonstrably ineffective residency restrictions, and the bizarre world of "civil commitment," where we punish what someone might do rather than what he or she has done. All of this suggests that our entire approach to dealing with sex offenders has gone tragically off the rails.

*Lisa F. Jackson is an Emmy-winning documentary filmmaker based in New York. Her last film, "Sex Crimes Unit," chronicled prosecutors in the Manhattan district attorney's office and "The Greatest Silence: Rape in the Congo" won a special jury prize for documentary at the 2008 Sundance Film Festival.*

David Feige, a television writer and former Trial Chief of the Bronx Defenders, is the co-creator of the T.N.T. series "Raising the Bar" and the author of "Indefensible: One Lawyer's Journey Into the Inferno of American Justice." He has written about law for The New York Times Magazine, The Los Angeles Times, The Washington Post and Slate.

# The New York Times

October 1, 2013

# Restricted Group Speaks Up, Saying Sex Crime Measures Go Too Far

**By IAN LOVETT**

LOS ANGELES — Larry Neely looked out across the expanse of an airport hotel conference room that usually holds conventions of labor unions, political groups or business executives.

On this day, though, the chairs were filled with dozens of people who, like Mr. Neely, have had to register as sex offenders.

Mr. Neely, who pleaded guilty to multiple counts of sexual indecency with a child dating to 2003, said that at first, "I was terrified; I was hiding, hoping to stay under the radar."

Across the room, men in the crowd nodded.

As local and state governments have imposed tough penalties for sex crimes in recent years, including restrictions on where sex offenders can live or even set foot, members of this highly stigmatized group have begun to fight back.

A few weeks ago, more than 100 people — sex offenders, almost all of them men, along with wives, girlfriends and mothers — came from around the country to "Justice for All: A Conference to Reform Sexual Offense Laws."

They and others have formed associations and are holding conferences like this one to argue that a wave of legal penalties and restrictions washing across the country has gone too far. They hope to convince judges, lawmakers and the public that indiscriminate laws aimed at all sex offenders are unconstitutional and ineffective.

Over the last few years, Mr. Neely has overcome his fear and taken on a decidedly public role: He has become an advocate for sex offenders' rights. At the conference, he urged others to speak up.

"Your fears are really rational," Mr. Neely said. "But if you don't fight, you will lose."

It is no easy sell, though.

A patchwork of laws that have gained favor since the mid-'90s, popular with lawmakers and

voters alike, bar convicted sex offenders from a large and growing array of public spaces. In California, as in many other states, sex offenders cannot live within 2,000 feet of a school, park or playground, and last year, a number of cities in Orange County forbade them to enter public parks and beaches.

A decade ago, the Supreme Court upheld the practice of posting the names, photographs and addresses of sex offenders online, and now many states maintain Web sites with that information. Janice Bellucci, a lawyer with Reform Sex Offender Laws, sponsor of the conference here for the last five years, ran through a list of challenges to other laws that had been shot down in courts across the country.

"I wish I had good news to report, but I don't," she told those present. "We've got to overturn this Supreme Court decision, because it's harming you all every day."

Victims' rights advocates expressed outrage at the notion of a convention to promote the rights of sex offenders.

"I find it very offensive that registered sex offenders are trying to defeat the measures we have put in place to protect children," said Nina Salarno Ashford, a lawyer with Crime Victims United. "They created their own issues. In trying to find sympathy, they're forgetting that somebody was assaulted, in many cases a child."

There are plenty of reasons sex offenders decline to speak publicly. Many have struggled to find work or a place to live since their convictions, and worry that neighbors will try to force them out if they learn of their criminal history. In the halls between workshops here, conference attendees discussed vigilantes who targeted and occasionally killed sex offenders.

Still, with more than 700,000 people now on sex offender registries across the country — close to the population of Alaska — the ranks of those willing to speak out are growing, albeit slowly.

"A lot of us are doing what we are supposed to do," Jason Shelton said. Since serving four years after a sexual encounter with a 14-year-old girl when he was 29, Mr. Shelton has married and finished an associate degree at a community college. He has been unable to find work because of his record, he said, and he and his wife now live with her mother.

At the conference, he resolved to speak publicly about the challenges he faced.

"I don't want to bother anyone else," he said. "All I want is a job."

Kathy Crawford, whose son is in federal prison for downloading child pornography, said she planned to testify before the Indiana legislature on her son's behalf. Others who had done so

warned her not to expect to sway any lawmakers. Change, they said, would be incremental.

"It's hard for me to say, 'This is what my son's offense was,'" said Ms. Crawford, 59, who was visibly uncomfortable discussing her son's case. She refused to give his name and referred to child pornography as "C.P." "But I have to do everything I can so that when he finishes paying his debt, he can be done."

Her discomfort was shared by many at the conference, highlighting the challenge of advocating for people who have committed crimes some consider akin to murder.

Instead of focusing on their own stories, many referred to recent studies, like a four-state survey paid for in part by the Justice Department that found that the recidivism rate among sex offenders was about 5 percent within five years of being released from custody. They also point to laws restricting where registered sex offenders can live, saying they have, in some cases, proved counterproductive, forcing many to move out of their family homes and turn to homelessness, making them more likely to commit another offense.

Prosecutors, however, remain dubious.

"We recognize that there is some argument that these laws don't work, the residency restrictions, but I think the jury is still out; I think they're good laws," said Susan Kang Schroeder, the spokeswoman for the Orange County district attorney, Tony Rackauckas, who last year spearheaded the campaign to ban registered sex offenders from public beaches and parks.

"The pro-sex-offender lobby likes to bandy about percentages, as if even 1 percent is acceptable," Ms. Schroeder said in an interview last year.

But in November, a state appeals court struck down the Orange County law. And last week, after the group Reform Sex Offender Laws sued, the City of Cypress, in Orange County, repealed a law requiring registered sex offenders to post signs on their front doors on Halloween.