UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 13-CR-244 (KBJ) |
| | : | |
| v. | : | |
| | : | |
| WESLEY HAWKINS, | : | SENTENCING:  NOVEMBER 21, 2013 |
|     Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

  The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case.  For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of incarceration of 24 months, to be followed by 96 months (8 years) of supervised release, with the conditions recommended by United States Office of Probation, including that the defendant undergo intensive sex offender treatment, the defendant's computer and internet usage be limited and monitored, and the defendant's direct contact with minors be limited and supervised.  The defendant is required by statute to register as a sex offender for a minimum period of 15 years.

**I.     BACKGROUND**

  **A.     Factual Background**

  Between on or about December 25, 2012, and on or about June 10, 2013, the defendant, Wesley Hawkins, possessed child pornography on his personal computer at his residence in Washington, D.C.  On various dates during that time frame, the defendant downloaded and/or received from one or more individuals over the Internet images and videos depicting child pornography.

On or about December 25, 2012, the defendant uploaded five video files from his computer to an identified web address controlled by You Tube, Inc.  The videos include:  (1) two prepubescent boys masturbating each other; (2) two prepubescent boys without any clothes, with one boy using his penis to anally penetrate the other boy; (3) three prepubescent boys engaged in sexual activity with each other, including oral and anal penetration; (4) three prepubescent boys engaged in oral and anal sex with each other; (5) two prepubescent boys engaged in oral and anal sex with each other.  Law enforcement learned about this upload through a Cybertipline Report ("cybertip") from You Tube, Inc., to the National Center for Missing and Exploited Children ("NCMEC").

On February 4, 2013, your Affiant, working in an undercover capacity ("UC"), sent an email to the defendant, at one of the email addresses identified in the first cybertip (js760151@gmail.com), stating, "Cant remember where i found you but i think we are into the same, yng, lil, boy etc."  The UC provided an online ID if the individual wanted to chat.  The individual replied, "who is this."  The UC provided a name and said, "saw your email somewhere i think on image share or youtube, thought we may have similar interest, if not no worries."  The individual asked, "do u have vids to share."  During the course of the email exchange, the individual said he was 18, that he likes children ages 11 to 17, and that he has videos to share.  At approximately 6:22 p.m. on February 4, 2013, the individual sent via email to the UC a video of a prepubescent male masturbating.  At approximately 8:00 p.m. on February 4, 2013, the individual sent via email to the UC a video of a prepubescent male masturbating. The UC also exchanged emails with the defendant at the email address wesleyhawkins2013@hotmail.com.  See Exhibit 1 (summary of emails on gmail address); Exhibit 2 (emails on Hotmail).

On or about January 19, 2013, the defendant uploaded approximately 21 images depicting child pornography and/or child erotica to a Skydrive account. Skydrive is a file hosting service owned by Microsoft. Skydrive allows users to upload files to cloud storage in which the uploaded files can be accessed by the user through logging into the service, but the files are stored in a data center owned by a third party. The 21 images include the following: (1) a prepubescent female child and a prepubescent male child standing next to each other without any clothes on where the female child is holding the male child's penis; (2) a male prepubescent child lying on his back with his legs in the air with an erect penis; and (3) a prepubescent male child lying on his back with his eyes closed and with his underwear pulled down to make the child's penis visible. Law enforcement learned about this activity through a cybertip from Microsoft to NCMEC.

On or about March 4, 2013, the defendant uploaded approximately 15 images depicting child pornography and/or child erotica to a Skydrive account. These files include a video of two prepubescent males engaging in sexual conduct, including what appears to be anal penetration of one male child by the other male child. Law enforcement learned about this activity through a cybertip from Microsoft to NCMEC.

On or about March 25, 2013, the defendant uploaded approximately 1 file depicting child pornography to his email account. The file contains an image of two male children, one of whom appears to be prepubescent. The prepubescent child is lying on his stomach on a bed. The other male child is on his knees straddling the prepubescent child with his penis appearing to penetrate the anus of the prepubescent child. Law enforcement learned about this activity through a cybertip from Google to NCMEC.

On or about June 10, 2013, law enforcement executed a search warrant at the defendant's house in Northwest Washington, D.C., and seized a cellular telephone iPhone IMEI # 990002833685140, and Toshiba Laptop S/N 8A119833A, with hard drive S/N 70QIF1YNS.  A preliminary forensic analysis of the laptop led to the identification of at least 17 videos and 16 images depicting child pornography.  These videos and images include the following depictions of prepubescent victims:

- 24:06 minute video depicting an approximately 12 year-old male masturbating before a web camera;
- 1:57 minute video depicting an approximately 8 year-old male masturbating before a web camera;
- 11:47 minute video depicting an approximately 11 year-old male masturbating and being anally penetrated by an adult male;
- 15:19 minute video depicting two approximately 11 year-old males masturbating and performing sexual acts on each other;
- 7:51 minute video depicting an approximately 12 year-old male masturbating before a web camera.[1]

Law enforcement officers interviewed the defendant at the time of the search.  The defendant admitted that he possessed child pornography.  The defendant was subsequently arrested.

## II.     SENTENCING CALCULATION

### A.     Statutory Penalties

The offense of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) carries a maximum sentence of 20 years of imprisonment pursuant to 18 U.S.C.

---

[1] The government will make any of the files depicting child pornography available for the Court to view in preparation for sentencing at the Court's convenience.

§ 2252A(b)(2) if any image involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age, a fine of not more than $250,000 pursuant to 18 U.S.C. § 3571(b), and a term of supervised release – after any period of incarceration – of not less than 5 years or life pursuant to 18 US.C. § 3583(k).  See Presentence Investigation Report ("PSR") ¶¶ 70, 77, 86.

In addition, there is a mandatory special assessment for each felony conviction pursuant to 18 U.S.C. § 3013(a)(2)(A).  See PSR ¶ 87.

### B.    Guidelines Range

The government agrees with the calculation of the defendant's Guidelines sentencing range contained in the PSR.  See PSR ¶¶ 24-38.  The base offense level is 18, pursuant to U.S.S.G. § 2G2.2.  See PSR ¶ 25.  The government agrees with the PSR that several specific offense characteristics apply:  the material involved prepubescent minors or minors under the age of 12 (+2); the offense involved distribution (+2); the material portrayed sadistic or masochistic conduct (+4); the offense involved the use of a computer (+2); the offense involved 600 or more images (+5).  See PSR ¶¶ 26-30.  There are no additional adjustments that apply.  See PSR ¶¶ 31-33.  The defendant's adjusted offense level is 33.  See PSR ¶ 34.

The defendant is entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).  See PSR ¶ 36.  The government hereby moves to decrease the defendant's offense level by an additional level pursuant to § 3E1.1(b) because he timely notified the authorities of his intention to enter a guilty plea and thus permitted the government and the Court to preserve resources.  See PSR ¶ 37.  As a result, the defendant's total offense level is 30.  See PSR ¶ 38.

The government agrees with the PSR that the defendant has no prior criminal convictions, and therefore has a criminal history score of zero and is in Criminal History Category I.  See PSR ¶¶ 39-42.

With an offense level of 30 and a Criminal History Category I, the defendant's Guidelines sentencing range is 97 to 121 months.  See PSR ¶ 71.

### III.  GOVERNMENT'S RECOMMENDATION

#### A.  Application of the Federal Sentencing Guidelines

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1).  <u>Booker</u>, 125 S. Ct. at 756.

In post-<u>Booker</u> cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  See <u>United States v. Gall</u>, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").  After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  <u>Id.</u>  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing

6

Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

On February 27, 2013, the Sentencing Commission released a report concerning the Guidelines for child pornography offenses ("The CP Report").  The CP Report contained numerous observations that are relevant to a sentencing judge.  The CP Report recognized that child pornography offenses inherently involve the sexual abuse and exploitation of children, that child pornography victims are specifically harmed by the distribution of their images over the Internet, and that many victims suffer lifelong harm at know that their images are being used by offenders for sexual gratification.  The CP Report emphasized the growing problem of online child pornography communities that facilitate and validate child sexual exploitation.  The CP Report also identified many problems with the non-production child pornography Guidelines and included recommendations about how to change the Guidelines to better account for offender behavior, including through the elimination of some specific offense characteristics and the revision and addition of other enhancements.

Although the Commission has asked Congress for permission to revise the child pornography Guidelines, no changes have been made at this time.  The CP Report did not suggest that courts should ignore the current Guidelines, but instead provided a framework of factors to consider under the statute.  These factors should be considered in conjunction with the – not instead of – the existing Guidelines.  Unless and until Congress signals its intent to permit changes to the Guidelines, a sentencing court should determine a defendant's Guidelines range based on the current Guidelines.  A sentencing court should then consider the CP Report as part of its analysis of the statutory factors.

### B.     Basis for the Government's Recommendation

Given the particular circumstances of this case, and especially the defendant's very young age, the government submits that a sentence of 24 months of incarceration and 96 months (8 years) of supervised release, with the specific conditions of supervision recommended by the United States Office of Probation, is appropriate and warranted in this case based on the factors in 18 U.S.C. § 3553(a).  The recommended sentence is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

#### 1.     Nature and Circumstances of the Offense

The defendant's possession of child pornography is extremely troubling and deserving of punishment.  The facts of this case establish that the defendant was involved in obtaining and trading child pornography from various sources over the course of multiple months.  The National Center on Missing and Exploited Children received four separate cybertips about the defendant's online activity relating to child pornography between December 2012 and May 2013.  When the defendant was contacted by email by an undercover detective in February 2013, he not only expressed an interesting in trading child pornography, but also sent the UC two separate files depicting child pornography.

Child pornography causes real and lasting harm in our society.  It is not just about images and videos; it is about the children in those images and videos.  It is about children who are at best being treated as sexualized objects and at worst being horrifically and repeatedly sexually abused.  The abuse of child pornography victims does not end, however, when the physical contact or production of images or videos is over.  The abuse and harm go on as long as those images and videos are viewed, traded, collected, and used by offenders for sexual gratification.  This harm cannot be overstated.  Particularly in the Internet age, victims of child pornography must attempt to cope with the knowledge that the worst moments of their young lives are forever

memorialized and available to child pornography consumers.  Individuals – like the defendant – who receive, seek, view, keep, trade, distribute, and use child pornography for their own sexual gratification are part of the illicit market for child pornography, which continually re-victimizes the children in already-existing images and videos and promotes the brutalization of even more children for new images and videos.

Courts have long recognized the harms posed by child pornography offenders.  As the Supreme Court recognized in the seminal case of New York v. Ferber:

> The use of children as subjects of pornographic materials is very harmful to both the children and the society as a whole.  It has been found that sexually exploited children are unable to develop healthy relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults.
>
> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.

458 U.S. 747, 758-60 nn. 9 & 10.  The Court continued, "[a] child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. . . . It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotion repercussions." Id. at 759 n.10.

As the Fifth Circuit similarly concluded, the crimes of a "'passive' child pornography recipient" are not "somehow attenuated as compared to a person who actually produces or distributes child pornography . . . victimization of a child depicted in pornographic material flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography." United States v. Norris, 159 F.3d 926, 930 (5th Cir. 1998).  After all, "the 'victimization' of the children involved does not end when the pornographer's camera is put away.  The consumer, or end

9

recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions." Id. at 929.

One of the victims whose image the defendant possessed submitted a victim impact statement, which has been provided to the Court under seal pursuant to 18 U.S.C. § 3509(d)(2). The victim impact statement describes how being a victim of child pornography has affected many areas of the victim's life, including the victim's inability to trust adults and struggle with anger issues.

The defendant's possession of child pornography is severely harmful to society in general and to the child victims in particular and warrants punishment.

### 2. History and Characteristics of the Defendant

The defendant has cooperated at all stages of this investigation and case. The defendant agreed to be interviewed by law enforcement at the time of the search, admitted possessing child pornography, and entered a pre-indictment guilty plea. The defendant took full responsibility for his actions and moved quickly to resolve the case. The government is not aware of any violations of the defendant's pretrial conditions of release. In addition, the defendant has no criminal history and has strong family support.

The government's recommendation takes into account that the defendant is extremely young, just 19 years of age, and that the defendant was only 18 years of age and was in high school during the offense conduct. The government has also considered the psychological report of Dr. Giunta and her assessment of why the defendant began and continued looking at and acquiring child pornography. Dr. Giunta's assessment in that regard is supported by the evidence and circumstances of this case. The government does not agree with Dr. Giunta's report in its entirety, and specifically takes issue with her formal risk assessment; however, Dr.

Giunta's report provides useful insights for purposes of sentencing regarding the defendant's personal circumstances, family situation, and stage of development.

### 3. Punishment, Deterrence, Protection, and Correction

A sentencing court "shall impose a sentenced sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2).

The government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the defendant's offenses.  The defendant's possession of child pornography harms society at large and specific child victims and warrants a sentence of imprisonment.  Moreover, a term of supervised release – with conditions including sex offender assessment and treatment and mental health treatment as needed – is important to ensuring that the defendant receives the treatment and support that will ensure he does not commit any additional crimes.

### 4. Available Sentences

The defendant should be sentenced to a term of incarceration.  The defendant is in Zone D of the Guidelines, and thus a probationary sentence would be a departure from the Guidelines.  According to the PSR, the defendant does not have the ability to pay a fine in this case.

The Court should impose a term of supervised release, and the government recommends a term of at least 96 months (8 years).  A lengthy term of supervised release is critical because it will subject the defendant to ongoing monitoring and sex offender treatment.  The conditions of

supervised release should include: sex offender evaluation and treatment, restrictions on direct contact with minors, and restrictions on the defendant's use of the Internet, computers, and any other Internet-capable devices. The defendant's crimes stem from his online activities: the defendant found child pornography online, received it online, and distributed it online. The defendant's use of the Internet to commit his crimes justifies restricting his future use. The Court should impose all of the special conditions recommended by the United States Office of Probation in the PSR and at sentencing.

### 5. Avoiding Unwarranted Sentencing Disparity

One of the statutory factors to consider at sentencing is the need to avoid unwarranted disparity. Indeed, avoiding such uncertainty and disparity was one of the purposes for the creation of the Sentencing Guidelines.

Recognizing that the facts and circumstances of each case are unique, the government submits that the defendant's case shares many characteristics with cases in which an individual was convicted of Possession of Child Pornography or Receipt of Child Pornography, with no other charges or potential charges.[2] Many such cases involved distribution via peer-to-peer file-sharing programs.

In United States v. Woodgates, Case No. 06-CR-083 (RCL), Woodgates pled guilty to one count of Possession of Child Pornography and was sentenced to 12 months and one day followed by five years of supervised release. Woodgates came to law enforcement's attention after he was observed viewing child pornography at work. Woodgates admitted viewing child pornography for a number of years and was found to have amassed a collection of it, which he

---

[2] The discussion below does not include possession of child pornography cases in which the defendant had a prior sex offense or child pornography conviction or a pending case and received a significantly more severe sentence.

obtained in various ways, including through online groups and chat rooms.  Between the time of the offense conduct and the time of his sentencing, while he was on release, Woodgates entered treatment and made substantial rehabilitative progress.

In <u>United States v. DiFazio</u>, Case No. 07-CR-022 (RJL), DiFazio pled guilty to one count of Possession of Child Pornography and received a below-Guidelines sentence of 12 months of incarceration with 84 months of supervised release.  DiFazio ordered a DVD that was advertised as containing child pornography from an undercover United States Postal Inspector.  DiFazio was found to possess numerous images of child pornography on his computer and in print form.

In <u>United States v. Sharp</u>, Case No. 07-CR-231 (CKK), Sharp pled guilty to one count of Possession of Child Pornography and was sentenced to 78 months of incarceration and 15 years of supervised release.  Sharp was a member of a paid website that enabled members to download images of child pornography and was found to possess a large number of videos and images (electronic and print) depicting child pornography.  Sharp's sentencing range under the Guidelines was 78 to 97 months.

In <u>United States v. Matheron</u>, Case No. 08-CR-066 (RWR), Matheron pled guilty to one count of Possession of Child Pornography and was sentenced to a below-Guidelines sentence of one year and one day of incarceration and 96 months of supervised release.  Matheron used his work computer at the Library of Congress to access child pornography and kept a collection of child pornography images in his online email account.

In <u>United States v. Briggs</u>, Case No. 08-CR-215 (CKK), Briggs, an attorney, downloaded child pornography via a peer-to-peer file sharing program onto his work computer.  Briggs pled guilty to the charge of Receipt of Child Pornography, which carries a 60-month mandatory minimum sentence.  The parties agreed to, and the court approved, a plea pursuant to Rule

11(c)(1)(C) with a below-Guidelines sentence of 70 months and a term of supervised release of ten years.

In <u>United States v. Tejada</u>, Case No. 09-CR-008 (PLF), Tejada pled guilty to one count of Receipt of Child Pornography and was sentenced to 72 months of incarceration and 120 months of supervised release.  Tejada had received child pornography via a peer-to-peer file sharing network.  The offense of Receipt of Child Pornography is subject to a 60-month mandatory minimum sentence.

In <u>United States v. John Boughton</u>, Case No. 09-CR-84 (EGS), Boughton pled guilty to one count of Possession of Child Pornography and was sentenced to 40 months of incarceration and 180 months of supervised release.  Boughton was a member of a private online bulletin board dedicated to child pornography.

In <u>United States v. Malakoff</u>, Case No. 09-CR-051 (ESH), Malakoff pled guilty to one count of Possession of Child Pornography and was sentenced to five years of probation.  Malakoff downloaded child pornography via a peer-to-peer file sharing program.  Additionally, Malakoff submitted expert reports that stated that he suffered Post-Traumatic Stress Disorder as a result of a forcible rape that he experienced as a child.

In <u>United States v. Rowan</u>, Case No. 09-CR-385 (RCL), Rowan pled guilty to one count of Possession of Child Pornography and was sentenced to a below-Guidelines sentence of 24 months, with 15 years of supervised release.  Rowan downloaded child pornography via a peer-to-peer file sharing program.

In <u>United States v. Wright</u>, Case No. 09-CR-311 (ESH), Wright was convicted of Possession of Child Pornography and sentenced to five years of probation.  Wright downloaded child pornography via a peer-to-peer file sharing program.

In <u>United States v. Moreira</u>, Case No. 10-CR-002 (ESH), Moreira pled guilty to one count of Possession of Child Pornography and was sentenced to five years of probation. According to the Statement of Offense, Moreira obtained and traded child pornography via a peer-to-peer file sharing program and distributed child pornography to an undercover detective on three different occasions.

In <u>United States v. Fasolini</u>, Case No. 11-87 (BAH), Fasolini pled guilty to one count of Possession of Child Pornography and was sentenced to 47 months of incarceration and 60 months of supervised release. Fasolini had downloaded child pornography to his computer at work. Fasolini pled guilty pursuant to an agreement under Rule 11(c)(1)(C) with an agreed-upon range of 36 to 48 months.

In <u>United States v. Metz</u>, Case No. 13-204 (RCL), Metz pled guilty to one count of Possession of Child Pornography and was sentenced to 36 months of incarceration and 120 months of supervised release. Metz downloaded child pornography to his computer via a peer-to-peer file-sharing program and deleted the child pornography after viewing it. Metz's Guidelines range was 87 to 108 months.

### 6.   Restitution

The government will notify the Court if any restitution requests are received.

## V.  CONCLUSION

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 24 months, to be followed by 96 months (8 years) of supervised release, with the recommended conditions of supervision.  The defendant is further required by statute to register as a sex offender for a minimum period of 15 years.

        Respectfully submitted,

        RONALD C. MACHEN JR.
        UNITED STATES ATTORNEY


        ___/s/_____
        Cassidy Kesler Pinegar
        Assistant United States Attorney
        D.C. Bar 490163
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7765
        Cassidy.Pinegar@usdoj.gov